# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BETTY BENSON ex rel. <br> DAVID BENSON, <br>         Plaintiff, <br> v. <br> MICHAEL J. ASTRUE, Commissioner of the <br> Social Security Administration, <br>         Defendant. | Case No. 09-CV-799-PJC |

## OPINION AND ORDER

Claimant, Betty Benson, on behalf of David Benson, ("Benson"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Benson appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Benson was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Claimant's Background

The Court usually summarizes the entire medical record of the claimant, but in this case both Benson's attorneys and the Commissioner agree that the issues before this Court relate to Benson's arguments that he was limited to sedentary work "due to breathing problems, significant

degenerative joint disease in the cervical spine, and significant degenerative changes in the right wrist." Plaintiff's Brief, Dkt #17, p. 1. Benson agrees that the large part of the record relating to Benson's depression and substance use are not before this Court. *Id.*; *See also* Commissioner's Brief, Dkt. #18, p. 3. Therefore, the Court is not summarizing the entire 1400-page record. Because the pivotal issue relates to Benson's right wrist and hand, the Court's factual summary is limited to those portions of the record that relate to that issue. The Court finds that the ALJ's decision should be reversed due to the ALJ's failure to address the evidence regarding Benson's right hand and wrist in formulating his RFC determination.

At the time of the hearing before the ALJ on March 16, 2009, Benson was 51 years old. (R. 23-24). At the hearing, Benson's attorney amended the date of alleged onset of disability to Benson's 50th birthday. (R. 23). *Id.* Benson completed ninth grade. (R. 25). He served in the army in 1976 and 1977 and received an honorable discharge. (R. 25-26). Benson testified that his last jobs were in 2004, and they were through temporary agencies. (R. 26).

Benson testified that he could not work because he was short of breath all the time, and his right hand was "really messed up" and needed surgery. (R. 26-27). Regarding his right hand, Benson testified that he could not do activities such as using a screwdriver. (R. 30). He said that if he used his hand in that way, it would create a "shock" pain that would go up his arm to his neck and ear. *Id.* He was wearing a brace at the hearing. (R. 30-31). Other examples of activities that could cause this "shock" pain were lifting or pouring milk. (R. 31). He said that he could probably lift 5 or 10 pounds with his right hand. *Id.* If he had to write with his right hand, his right wrist would start to hurt after just a few lines of writing. (R. 32-33). Benson testified that it caused pain if he brought his arm up past his shoulder. (R. 33). He used his left hand to do things like brushing

his teeth to avoid the pain he got if he used his right hand. (R. 33-34).

Benson cooked easy things like canned soup or corn dogs. (R. 35). He could try to do the dishes, but it would be hard because he couldn't use his right wrist and he would probably have to rest due to his breathing problems. *Id.* He drove a car. (R. 38).

Benson was given a physical by Stephanie A. Plummer, Master of Science in Nursing, Board Certified Advanced Practice Registered Nurse, Psychiatric Mental Health Nurse Practitioner, on June 6, 2007 in connection with his admission into a substance abuse program. (R. 664-75). Benson reported pain of 9/10 in his neck, 5/10 in his right wrist, 5/10 in his lower back, and 2/10 in his left shoulder and knees. (R. 670). He described his neck pain as constant, but said that pain medication had helped in the past for all of his pain symptoms. (R. 670-71). He had decreased range of motion in his neck, back, right hand, right wrist, and left shoulder, but with normal stability and alignment. *Id.*

X-rays of Benson's right wrist were taken in August 2007. (R. 1231). The x-rays showed that "[t]here are significant degenerative changes about the proximal row of carpals. Apparent old fracture demonstrated related to the ulnar styloid. There is probably at least mild anterior subluxation of the lunate relative to the radial articular margin. This is not likely acute." *Id.* This was then described as significant degenerative joint disease of Benson's right wrist. *Id.*

Additional x-rays were taken on February 14, 2008. (R. 1173). X-rays of Benson's right forearm showed suspected degenerative disease of the right wrist, with no evidence of osteomyelitis, with a calcification that might have represented a previous trauma. (R. 1174).

Benson saw Stephen Michael Ackerley, M.D. for follow up on April 28, 2008. (R. 703-04). Benson complained of left elbow pain and right wrist pain. (R. 703). X-rays taken of his right wrist

3

showed degenerative arthritic changes of the intercarpal joints of the right wrist and the radiocarpal joints. (R. 1178). The x-rays showed increased findings when compared with the August 2007 x-rays. *Id.* Dr. Ackerley stated that the x-rays showed "changes of [the] carpus consistent with static instability." (R. 704). Regarding Benson's right wrist, Dr. Ackerley described this as a "chronic problem" of post traumatic arthritis, and he did not consider Benson a good candidate for an elective surgical procedure of arthrodesis. *Id.* Instead Dr. Ackerley said he would treat the condition conservatively "with activity modification, neutral wrist bracing, and appropriate pain management." *Id.*

No consultative physical examination of Benson was done, and no Physical Residual Functional Capacity Assessment was completed by any person.

## Procedural History

Benson filed applications on April 26, 2007 seeking disability insurance benefits and supplemental security income benefits under Titles II and XVI, 42 U.S.C. §§ 401 *et seq*. (R. 119-26). Benson alleged onset of disability as September 20, 2003. (R. 119). The applications were denied initially and on reconsideration. (R. 54-61, 63-68). A hearing before ALJ Charles Headrick was held March 16, 2009 in Tulsa, Oklahoma. (R. 20-45). At the hearing, Benson amended his date of onset to February 2008. By decision dated May 26, 2009, the ALJ found that Benson was not disabled. (R. 11-19). On October 29, 2009, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Decision of the Administrative Law Judge

The ALJ found that Benson's date last insured was March 31, 2008. (R. 13). At Step One, the ALJ found that Benson had not engaged in any substantial gainful activity during the relevant period of Benson's amended onset date of February 2008 through the date last insured, March 31, 2008. *Id.* At Step Two, the ALJ found that Benson had severe impairments of degenerative disc disease; degenerative joint disease; chronic obstructive pulmonary disease; and depression. *Id.* At Step Three, the ALJ found that Benson's impairments did not meet a Listing. (R. 14).

The ALJ determined that Benson had the RFC to perform the full range of light work with restrictions that he could not perform work that required understanding, remembering, and carrying out detailed job instructions or more than minimal interaction with the general public. (R. 15). At Step Four, the ALJ found that Benson could not perform his past relevant work. (R. 17). At Step Five, the ALJ found that there were jobs that Benson could perform, taking into account his age, education, work experience, and RFC. (R. 17-18). Therefore, the ALJ found that Benson was not disabled during the relevant period. (R. 18).

## Review

Benson makes several arguments, but the Court addresses only the failure of the ALJ to discuss any possible restrictions on Benson's ability to use his right hand when he formulated his RFC. The Court finds that reversal is required because in making his RFC determination the ALJ failed to consider the evidence favorable to Benson's claim that he had limited use of his dominant right hand and wrist.

It is oft-stated law in this circuit that an ALJ must discuss more than just the evidence favorable to an opinion that a claimant is not disabled:

> [I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). It is error to ignore evidence that would support a finding of disability while highlighting the evidence that favors a finding of nondisability. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

In *Givens v. Astrue*, 251 Fed. Appx. 561, 566 (10th Cir. 2007) (unpublished), the ALJ found that the claimant's impairments at Step Two included depression, but he did not include any reference to mental limitations in his RFC determination. The Tenth Circuit criticized the ALJ's treatment of the medical evidence relating to the claimant's mental issues, and the court specifically found that it was error to include the impairment at Step Two, with no discussion of the impairment in relation to his RFC determination or his analysis at Step Five. *Id.* at 567-68. In remanding the case, the Tenth Circuit said that the ALJ needed to "provide adequate reasons" if he rejected any significantly probative medical evidence in formulating the claimant's RFC. *Id*. at 568.

While *Givens* is an unreported case, it is persuasive here in combination with the basic

requirement noted above that the ALJ is required to discuss uncontroverted medical evidence that supports the claimant's assertions. Here, Benson testified that he could not work due to breathing problems and the condition of his right hand. (R. 26-27). The ALJ found that "degenerative joint disease" was one of Benson's severe impairments at Step Two, and he cited to the August 2007 and April 2008 x-rays of Benson's right wrist as part of the explanation for that finding. (R. 13). The ALJ also properly mentioned Benson's testimony regarding his right wrist in his summary. (R. 15). At that point, however, the ALJ never again addressed any restrictions, or lack of restrictions, regarding Benson's use of his wrist. Because the medical condition of his right wrist and hand was one of Benson's primary complaints, and because the ALJ found that condition to be a severe impairment at Step Two, he was required to address why he did not find any restrictions on Benson's use of his hand when he determined that Benson could perform the entire range of light work, with only mental-related nonexertional restrictions.

The ALJ's error in omitting any discussion of Benson's right wrist when he made his RFC determination is made especially clear because of three aspects of the case. The first aspect is the evidence of Dr. Ackerley, a treating physician, who described Benson's wrist problem as a "chronic problem" that needed treatment with "activity modification" and "neutral wrist bracing," given that Benson was not a good candidate for surgery. (R. 704). While Dr. Ackerley did not elaborate on the extent of the activities Benson should not perform given his wrist condition, his statement certainly indicates that Benson did not have a full range of ability to use his right hand and wrist, which is consistent with Benson's claims. Given the nature of the treating evidence of Dr. Ackerley and its implication that Benson had limited use of his right hand, the ALJ was required to discuss this evidence and to explain why he nevertheless did not include any limitation on Benson's use of

his right hand when he made his RFC determination.

Second, Benson has pointed out that the ALJ had no opinion evidence as to Benson's physical impairments of any kind, other than the statements of Dr. Ackerley described above, on which to rely in formulating his RFC. Benson argues that the ALJ's failure to develop the record by having a consultative examination and a Physical Residual Functional Capacity Assessment performed is also reversible error. The precedents Benson cites on this issue are not persuasive, and the Court declines to make a pronouncement on whether the ALJ was required to develop the record in this way, especially given that Benson was represented at the hearing and his attorney apparently did not raise the issue.[2] The lack of any opinion evidence, however, in combination with the evidence of Dr. Ackerley, means that the ALJ's RFC determination as to Benson's ability to use his right hand and wrist was not supported by substantial evidence. Third, the Court agrees with Benson that the issue of his use of his right, dominant hand was a critical one, given that the Vocational Expert testified that all of the jobs to which she testified required frequent use of the dominant hand. (R. 44).

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, at 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because the errors related to Benson's use of his right hand and wrist require reversal, the

---

[2] *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (in the absence of a request by counsel, the court "will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record").

undersigned does not address the remaining contentions of Benson. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Benson.

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 11th day of March, 2011.

_____
Paul J. Cleary
United States Magistrate Judge